638 A.2d 388

**PHILM CORPORATION, Appellant,**

v.

**WASHINGTON TOWNSHIP; Stanley J. Margle III, Esq.; and Stanley M. Lysek, Zoning Officer and Jill C. Corley and Charles R. Rissmiller.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1993.

Decided Feb. 16, 1994.

Reargument Denied March 29, 1994.

---

Anthony J. Martino, for appellant.

David J. Ceraul, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before us is an appeal by Philm Corporation (Philm) from a judgment entered in favor of Washington Township, Stanley J. Margle, III, and Stanley M. Lysek (Appellees) and Jill C. Corley and Charles R. Rissmiller (Intervenors). In this declaratory judgment action, The Court of Common Pleas of Northampton County ruled that Philm must make application for a variance to the Washington Township Zoning Hearing Board in order to continue operating its establishment known as The Fox in its present location in Washington Township.

It is undisputed that prior to Philm opening The Fox on October 1, 1992, the premises in question was used over the years as a restaurant/tavern by several different owners using

a variety of names. The area is zoned as a medium density residential (R–2) district, but the use of the premises as a restaurant/tavern predates the enactment of the Township zoning ordinance, making such use an established non-conforming use. The premises have always been licensed by the Pennsylvania Liquor Control Board with an amusement permit.

The trial court found that prior to opening The Fox, Philm made a variety of changes in the interior design of the building. It enlarged the bar area, increasing the number of seats at the bar, threefold, and constructed a dance floor on top of the bar within a short distance from the bar patrons. Philm also removed a wall which was previously used to enclose an area for more private dining but which obstructed the view of the dance floor.

From the date of opening, The Fox presented live go-go dancers who entertain continuously in two hour sets every day except Sunday from 12:00 noon to 12:00 midnight. It employs thirty (30) to thirty-five (35) such dancers, but it employs no waitresses, and offers a limited menu. The newspaper advertisement announcing The Fox's "Grand Opening" on October 1, 1992 pictured a man with a shotgun saying, "Are you a fox?", and a woman saying, "If you are the hunter." The advertisement also stated that there would be twenty girl dancers. It made no reference whatsoever to a restaurant or to the provision of food on the premises of The Fox. A second advertisement also featured the fox-hunter routine and prominently displayed the hours the dancers would perform, while noting secondarily that there would be daily luncheon specials and rooms for rent.

At least one of the establishment's predecessors in title, Mr. Marino Saveri, employed a band and/or a guitarist for approximately twelve (12) engagements in 1982. Other previous owners have had non-live entertainment such as arcade games, jukeboxes and television sets, but the trial court found that no live entertainment had been presented on the premises for more than five years prior to the opening of The Fox.

On the first day of operation, a Washington Township zoning officer, Stan Lysek, visited The Fox because of complaints received concerning the plans for the new establishment. He then issued a cease and desist order on the basis that Philm had violated sections of the zoning ordinance regarding construction alterations and changes in the use of non-conforming premises. On October 13, 1992, the Township then sought a preliminary injunction permanently enjoining the operation of The Fox. Upon agreement of the parties and approval by the court, this application was abandoned and Philm filed a declaratory judgment action on the issue of whether its use of the premises required it to apply to the Zoning Board for a variance pursuant to Section 4.6(G)(2)a of the Washington County Zoning Ordinance. Section 4.6(G)(2) provides in pertinent part that, "[a] nonconforming use may be changed to another non-conforming use *only if permitted as a Variance by the Zoning Hearing Board ...*" (emphasis added).

Philm claims that the principal use of the subject premises as a restaurant/bar has not changed and that the dancing is only an incidental or accessory use, similar to the entertainment provided by earlier owners. A principal use is defined in the Washington Township Zoning Ordinance at section 2.1(B)(114) as "[t]he single dominant use or single main use on a lot," while an accessory use is defined at Section 2.1(B)(6) as "[a] use subordinate to the principal use on the same lot and customarily incidental thereto."

In determining whether a use has changed it must be kept in mind that a property owner's right to expand a lawful non-conforming use to meet natural business expansion is protected by the law and the Constitution. *Township of Kelly v. Zoning Hearing Board of Kelly Township*, 36 Pa.Commonwealth Ct. 509, 388 A.2d 347 (1978). However, it is also the policy of the law to closely restrict such non-conforming uses and to strictly construe provisions in zoning ordinances which provide for non-conforming uses in order to discourage the indefinite continuation of structures on the land which are in complete variance with the zoning plan. *Hanna v. Board of*

*Adjustment of Forest Hills*, 408 Pa. 306, 183 A.2d 539 (1962). Therefore, there is no constitutionally protected right to change from one non-conforming use to another, *Hammond v. Zoning Hearing Board of the Borough of Stroudsburg*, 129 Pa.Commonwealth Ct. 144, 564 A.2d 1324 (1989).

■ "To qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use as not to constitute a new or different use." *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54, 55 (1993). The proposed use need not be identical to the existing use, and an overly technical assessment of that use cannot be utilized to stunt its natural development and growth. *Chartiers Township v. W.H. Martin Inc.*, 518 Pa. 181, 542 A.2d 985 (1988).

In our Supreme Court's most recent pronouncement concerning the question of whether a proposed use was sufficiently similar to an existing use so as to constitute a continuation or expansion of an existing non-conforming use, it cited several factors which were valuable for assessing whether the "actual" use of the premises had changed. *Limley*. In determining if a proposed public restaurant and bar were sufficiently similar to the private club previously operating on the premises, the Court considered whether the chief activity would change, whether the hours of operation would change, whether the menu changed, whether the number of people using the establishment changed, whether it would still function as a social gathering place for weddings and graduations, and whether the majority of the patrons would continue to arrive at the establishment by car. *Id.*

■ Applying these criteria to the situation here we find that the principal use of the subject premises since The Fox commenced business on October 1, 1992, is not sufficiently similar to the use of the premises by previous owners. We agree with the trial court that, "what was once a series of restaurants/bars, which offered occasional live entertainment and incidental non-live entertainment, is now an establishment designed to provide live entertainment, with food and drink

being served incidental to such entertainment." (Vol. II, 423a.) Thus the first factor discussed in *Limley*, the chief activity on the premises, has changed significantly.

Evidence of this change can be found when considering the other factors enumerated in *Limley*. The Fox reduced the selections on the menu so severely that the owner did not need to employ waiters or waitresses to serve meals, and instead the cook and bartender serve whatever food is requested. There is now continuous entertainment from the time the establishment opens until it shuts down for the night, while before, live entertainment was presented infrequently and non-live entertainment was available sporadically.

Moreover, such capital investments as were made to convert the property to Philm's use were made in the re-design of the premises to focus on the entertainment. All barriers to viewing the dance stage were removed, and by removing a partition there was no longer any area for private dining which was inaccessible to the entertainment. *See, Appeal of Mignatti* 403 Pa. 144, 168 A.2d 567 (1961).

Appellant argues that where a zoning ordinance does not distinguish between the various types of uses in the provisions which define and permit uses, a business is not deemed to change its use. Thus, because there is no classification called cabaret, night club or theater [1] in the Washington Township Zoning Ordinance and because none of these terms is defined, the use cannot have changed from restaurant/tavern to the above uses.[2] However, *Limley* teaches that formalistic or technical definitions are not determinative, rather the "actual"

---

1. This statement is inaccurate. An indoor theater is a use permitted as of right in a commercial district, but not permitted as of right in a rural center district. In contrast, a restaurant is permitted in both of these districts. Washington Township Zoning Ordinance, §§ 3.9(B)(12), 3.10(B)(11), (21).

2. A restaurant is defined in the zoning ordinance as, "[a] building in which food is prepared and served to the public for consumption, where waiters or waitresses take orders and serve food to people at tables, booths or counters." Washington Township Zoning Ordinance, § 2.1(B)(120). Although food is served on the premises of The Fox, there are no waiters or waitresses and thus even under the definition found here, The Fox may not qualify as a restaurant.

proposed use, as compared to the previous "actual" use, must be analyzed to determine whether there is sufficient similarity. As shown above, the principal use of the premises has changed from a restaurant/bar to an entertainment facility, with the sale of food and drink as an accessory or subordinate use.

Philm also argues that because it does not charge for the entertainment and derives 100% of its income from food and drink, the principle use of the premises is as a restaurant/tavern and the entertainment is an incidental drawing feature. This statement is somewhat misleading because although Philm does not derive any income directly from the entertainment, it was admitted that the dancers themselves derive a certain portion of their income from the entertainment itself. Indeed, Philm only pays the dancers sixty dollars ($60.00) for dancing six sets from twelve noon to twelve midnight, and although it was not ascertained exactly how much they earned in tips, it was admitted that patrons directly placed bills in the dancers' hand or garter belt while they were performing. (Vol. I, 237a–238a).

Moreover, how an establishment derives its income is not determinative of its principle use. Thus, for example, a publisher of a newspaper may derive all or most of its income from the sale of advertisements rather than sales to its readers and still retain its function as a newspaper providing news to its readership. Similarly, The Fox's principle activity is providing entertainment, but its income derives from the incidental sale of food and drink, while its dancers derive at least a portion of their income directly from the patrons for the entertainment. Thus, the derivation of The Fox's income does not conclusively indicate the principle use of the premises.

The present "actual" use of the non-conforming premises is to provide entertainment. Thus, it is not of the "same general character," as the previous use, providing food and drink, and is not sufficiently similar to constitute a continuation of a non-

conforming use. *Gustin v. Zoning Hearing Board of Sayre Borough,* 55 Pa.Commonwealth Ct. 410, 412, 423 A.2d 1085, 1087 (1980).[3]

Next, Philm argues that the trial court's findings of fact are not supported by substantial evidence. After close perusal of the record and the attached exhibits, we affirm on the excellent opinion of The Honorable F.P. Kimberly McFadden, dismissing Philm's post-trial motions. (Opinion and Order, April 6, 1993.)

Finally, Philm claims that Washington Township is attempting to regulate the entertainment at The Fox absent any regulatory legislation lawfully enacted by the Township. Philm claims that absent such legislation, the Pennsylvania Liquor Control Board is the only authority which may regulate the entertainment presented, and, thus, the Township's efforts to regulate the incidental entertainment on the premises of a restaurant with a liquor and entertainment license is illegal.

This argument fails because we have determined that the entertainment on the premises is not an incidental use, but the principle use of the premises, and because the Township is not attempting to regulate the entertainment on the premises by, for example, limiting the hours of the shows, but is lawfully enforcing its zoning regulations regarding the use of nonconforming premises.

Accordingly, the decision of the Court of Common Pleas of Northampton County ordering Philm to make application for a

**3.** Philm also argues that the trial court erred in: (1) holding that entertainment, as a nonconforming use, had been abandoned because no live entertainment had been presented for five years previously, and thus, the use of the property for entertainment purposes was a change in use requiring the present owner to conform the use of the premises to the surrounding zoning district (R-2) or make application for a variance, and (2) the issue of abandonment had been waived. We need not address these issues because we have already held that there was a change in non-conforming use by the present owner requiring it to make application for a variance.

variance to the Washington Township Zoning Hearing Board in order to continue operating The Fox is affirmed.

## ORDER

AND NOW, this 16th day of February, 1994, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby affirmed.

McGINLEY, Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that the principal use of the subject premises has changed from a restaurant/bar to an entertainment facility.[1] The subject premises has always been licensed by the PLCB with an amusement permit. Although the type of entertainment changed when Philm reopened the premises on October 1, 1992, I believe the entertainment still remains merely incidental to the principal restaurant/bar use of the premises. As a result, absent specific local zoning legislation regulating entertainment, Philm need only comply with PLCB regulations.

I would reverse.

---

1. The majority also notes that cosmetic interior renovations were made to the premises. However, the issue before the trial court was whether the present use of the premises requires a variance and not whether the construction alterations violated the Township's Zoning Ordinance.